IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BARBARA BIAS,

        **Plaintiff,**

v.                                   **Case No.: 2:21-cv-00034**

KILOLO KIJAKAZI,
**Acting Commissioner of the
Social Security Administration,**

        **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 13, 14).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's request for judgment on the pleadings be **GRANTED**, the Commissioner's decision be

**AFFIRMED,** and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

Plaintiff Barbara Bias ("Claimant") protectively filed for DIB in May 2019, alleging a disability onset date of October 2, 2015 due to "broken back, Crohn's Disease, fibromyalgia, carpel tunnel [sic], carsel tunnel [sic] – feet and elbows, knee pain, and depression." (Tr. at 12, 164-65, 176). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on April 16, 2020 before the Honorable Francine A. Serafin, Administrative Law Judge (the "ALJ"). (Tr. at 28-54). By written decision dated May 19, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 9-26). The ALJ's decision became the final decision of the Commissioner on November 17, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8). Claimant filed a Brief by Plaintiff in Support of Appeal and Request for Remand, (ECF No. 13), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 14). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 54 years old on her alleged disability onset date and 60 years old

on her date last insured. (Tr. at 77). She has the equivalent of a high school education, communicates in English, and previously worked as a bank teller and data entry clerk. (Tr. at 175, 177).

### III.    Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is

the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. WeinBerger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or

"mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1).

Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental function. *Id.* § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2020. (Tr. at 14, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since October 2, 2015, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: compression fracture of spine

with sacroiliitis and lordosis, osteoarthritis, carpal tunnel syndrome, ulcerative colitis, osteopenia, and obesity. (*Id.*, Finding No. 3). The ALJ also considered Claimant's mental impairments, but the ALJ found that the impairments were non-severe, and the ALJ determined that fibromyalgia was not a medically determinable impairment. (Tr. at 14-17).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 17-18, Finding No. 4). Accordingly, she determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and [stairs], but never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and should avoid frequent exposure to extreme cold, heat, wetness, humidity, vibration, and workplace hazards such as moving machinery or unprotected heights.

(Tr. at 18-22, Finding No. 5). At the fourth step, the ALJ determined that Claimant could perform her past relevant work as a bank teller and data entry worker. (Tr. at 22-23, Finding No. 6). Therefore, the ALJ concluded that Claimant was not disabled and not entitled to benefits. (Tr. at 23, Finding No. 7).

## IV.    Claimant's Challenges to the Commissioner's Decision

Claimant asserts two general challenges to the Commissioner's decision. She argues that the ALJ's RFC analysis regarding her pain and physical, mental, and visual abilities is not supported by substantial evidence, and the ALJ did not include all of her limitations in the hypothetical posed to the VE. (ECF No. 13 at 3-8). In response, the Commissioner argues that the ALJ properly evaluated Claimant's physical and mental functional abilities, and substantial evidence supports the ALJ's findings. (ECF No. 14

at 9-18).

## V.    **Relevant Evidence**

The undersigned examined all of the evidence in the record. The following evidence is most relevant to the issues in dispute.

### A. *Treatment Records*

Claimant presented to family medicine physician Lafferty Howard, D.O., on May 30, 2017, complaining of bilateral knee pain. (Tr. at 286). Dr. Howard examined Claimant and found no abnormalities. He noted normal range of motion and intact sensation. (Tr. at 288). Dr. Howard diagnosed Claimant with osteoarthritis of the knees and renewed her prescription for Norco, but remarked that he was titrating Claimant off of opioids. (Tr. at 288-89). Claimant underwent diagnostic testing that summer to evaluate her various pain complaints. Her EMG on July 10, 2018 reflected mild bilateral carpal tunnel syndrome. (Tr. at 250). X-rays performed on July 12, 2018 showed bilateral sacroiliitis in Claimant's lumbar spine; mild osteoarthritis in her hands and feet; and no right shoulder abnormalities or acute findings in any of the foregoing areas. (Tr. at 253-58).

On September 7, 2018, Claimant presented to the emergency room at Boone Memorial Hospital, reporting low back pain after she fell at home one week earlier while trying to restrain her dog. (Tr. at 269, 353). She explained that she attempted to recuperate by resting at home, but the back pain persisted. (Tr. at 353). Claimant was diagnosed with a compression fracture at L1 and prescribed medications. (Tr. at 270-71). Orthopedist James Harman, D.O., examined Claimant on October 5, 2018. She reported to Dr. Harman that prolonged standing aggravated her back pain but sitting alleviated it. (Tr. at 353). On examination, Claimant had limited range of motion and

7

tenderness to palpation in her lumbar spine, but normal gait, station, lower extremity range of motion, and deep tendon reflexes; 5/5 strength throughout; intact sensation; and negative straight leg raising tests. (Tr. at 355). Dr. Harman recommended an MRI. (*Id.*).

On August 8, 2019, Claimant's x-rays showed stable lumbar findings; one millimeter degenerative spurs in each elbow but no acute findings; mild degenerative changes in her right knee; mild enthesopathy but no bone pathology in her left knee; mild osteoarthritis in her left foot; and degenerative changes in her right foot. (Tr. at 332-38). When Claimant presented for medication refills on August 19, 2019, she noted that she was twice denied social security disability benefits and was "considering going back to work versus hiring a lawyer to fight." (Tr. at 341).

During follow up on August 30, 2019, Dr. Harman recorded that Claimant's back pain was managed conservatively with bracing and analgesics. (Tr. at 357). She had no motor weakness or sensory disturbance; intact coordination and reflexes; and normal, pain-free range of motion of her cervical and lumbar spine. (Tr. at 357-58). Dr. Harman stated that he would consider performing a balloon kyphoplasty if Claimant's MRI showed abnormal signal within the L1 body. (Tr. at 359). However, Claimant's MRI scheduled on November 2, 2018 was evidently canceled and she left her November 26, 2018 lumbar MRI appointment without being seen. (Tr. at 351-52).

### B. Evaluations, Opinions, and Prior Administrative Findings

On June 24, 2019, psychologist Nicole Smith, M.A., completed an adult mental status examination of Claimant. Claimant drove herself to the appointment; stated that she was disabled due to physical complaints; and noted that, although her primary care provider prescribed Effexor since 2012, she never received mental health treatment or

was hospitalized for mental health reasons. (Tr. at 319-20). On examination, Claimant displayed depressed mood with congruent affect, but she was cooperative and made good eye contact. She demonstrated moderately impaired judgment and social functioning; mildly impaired recent memory and concentration; proper hygiene; and other normal findings, including normal speech, thought processes, thought content, perception, insight, psychomotor behavior, immediate and remote memory, persistence, and pace. (Tr. at 321-22). In terms of activities, Claimant stated that she maintained her checking account; paid bills; managed her own finances; watched television; made coffee; took medication; performed all self-care duties independently; showered; did household chores, including laundry, dishes, and cooking; napped; went to medical appointments; and spent time with her family. (Tr. at 323).

Psychologist Rosemary L. Smith, Psy.D., performed a psychiatric review technique on July 17, 2019, concluding that Claimant did not have any mental functional limitations in the paragraph B criteria. (Tr. at 84). Dr. Smith considered the consultative examiner's finding that Claimant had moderately impaired social functioning, but she noted that Claimant was cooperative and maintained good eye contact during the examination, and she did not allege problems getting along with others. (*Id.*). James Binder, M.D., affirmed Dr. Smith's findings on November 19, 2019. (Tr. at 97-98).

On July 25, 2019, Stephen Nutter, M.D., performed an internal medicine examination. Claimant stated that she suffered from back pain since she fell in August 2018, and she experienced numbness and tingling in her fingers, ankles, and feet. (Tr. at 326). Claimant ambulated with a normal gait and appeared stable at station and comfortable in the sitting position. (Tr. at 327). Her upper extremities were non-tender

with negative Tinel's sign, and she had normal range of motion in her hands, fingers, and wrists and 5/5 grip strength. (Tr. at 328, 330). She could write with her dominant hand and pick up coins bilaterally without difficulty. (Tr. at 328). Claimant complained of pain during lumbar and right knee range of motion testing and the tip of her right big toe was amputated, but her straight leg raising tests were negative and she had normal range of motion in her dorsolumbar spine, hips, knees, and ankles, except for slightly reduced flexion of the dorsolumbar spine and knees. (Tr. at 329-30). Claimant demonstrated 5/5 strength in her upper extremities and hips; 3/5 strength in her knees, dorsiflexion, and toe extensor; and zero plantar flexion; however, Dr. Nutter documented that Claimant exerted submaximal effort on strength testing. (Tr. at 329). Claimant's sensation was well preserved with no atrophy or clonus and normal reflexes. (*Id.*). She could stand on her heels and toes, but she said that it hurt too much to walk on her toes. She could perform tandem gait with slight difficulty balancing, but could not squat. (*Id.*). Her uncorrected vision was 20/100. (Tr. at 327). Dr. Nutter diagnosed Claimant with chronic lumbar strain, Crohn's disease, and osteoarthritis. (Tr. at 329).

On August 9, 2019, Narendra Parikshak, M.D., assessed that Claimant could perform light work with occasional postural activities other than frequent balancing; she did not have any manipulative or visual limitations; and she could not tolerate concentrated exposure to extreme cold, wetness, vibration, or hazards (Tr. at 86-87). Dominic Gaziano, M.D., affirmed Dr. Parikshak's assessment on November 20, 2019. (Tr. at 99-101).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on April 16, 2020 that she

"hurt everywhere," including her back, knees, wrists, and elbows; her fingers locked up; and she suffered from numbness in her hands and feet, depression, and poor eyesight. (Tr. at 40, 41, 43). Claimant asserted that she had trouble lifting, reaching, grasping, holding objects, and maintaining balance. (Tr. at 36-38). She also claimed that she could not see "close up" or "far away" because her corrected vision was 20/40. (Tr. at 43). Claimant testified that she could drive, but hardly did so, and she did not shop or do household chores other than unload the dishwasher. (Tr. at 38-39). Claimant stated that she spent her days watching television and did not leave the house except for medical appointments. (Tr. at 41).

### D. ALJ's Prior Decision

Claimant filed a prior DIB application, alleging the same disability onset date as she did in the instant matter, October 2, 2015, and it was considered by the same ALJ. (Tr. at 58). The ALJ assessed that Claimant's only severe impairment was ulcerative colitis, she had the RFC to perform a range of light work, and she could perform her past relevant work as a bank teller and administrative assistant. (Tr. at 60, 63-66). The ALJ denied Claimant's application by decision dated March 6, 2018. (Tr. at 58-66).

## VI.  Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  Discussion

Claimant challenges the ALJ's RFC analysis and reliance on VE testimony. Each argument is discussed below, in turn.

### A.  RFC

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

### 1. Physical Functions

Claimant contends that the ALJ did not adequately account for her limited ability to sit, stand, walk, balance, squat, reach, handle, finger, and feel. (ECF No. 13 at 3-6). Specifically, Claimant asserts that the ALJ did not give enough weight to the evidence of her lumbar fracture, which she claims supports her testimony regarding pain and numbness in her back and legs; her "issues" with her foot and big toe; Dr. Nutter's assessment that she could not sit for more than 30 minutes and was unable to squat; osteoarthritis in her hands causing pain and numbness; and limited cervical range of motion. (*Id.*).

A review of the written decision confirms that the ALJ considered the relevant evidence and performed a function-by-function analysis of Claimant's ability to perform work-related activities. The ALJ reviewed Claimant's allegations, including her testimony that she had difficulty lifting, reaching, walking, and balancing; had arthritis in her knees, hands, and elbows; and took Hydrocodone and Tramadol for pain. (Tr. at 18). The ALJ thoroughly discussed the medical evidence concerning Claimant's lumbar fracture, which was treated conservatively with medication and a brace. (Tr. at 19). The ALJ noted that Claimant's orthopedist scheduled an MRI to determine if kyphoplasty was needed, but it was canceled and Claimant left the rescheduled appointment without being seen. (*Id.*). The ALJ also evaluated the effects of Claimant's mild osteoarthritis and carpal tunnel syndrome on her ability to work.

14

(Tr. at 20).

The ALJ noted that, despite her impairments, Claimant maintained normal gait, was stable at station, appeared comfortable sitting, had no atrophy, a negative straight leg raising, 5/5 strength, normal reflexes, and intact sensation. Claimant could write with her dominant hand and pick up coins bilaterally without difficulty. (Tr. at 19-21). The ALJ further considered Claimant's daily activities, the prior administrative findings, and her decision on Claimant's prior application for benefits. (Tr. at 21-22). The ALJ found that the state agency physicians' assessments and her prior decision that Claimant could perform a range of light work were partially persuasive, but the ALJ assessed greater postural and environmental RFC limitations based on more recent evidence of Claimant's compression fracture, osteoarthritis, carpal tunnel syndrome, obesity, and osteopenia. (*Id.*).

It is clear that the ALJ thoroughly considered and analyzed the relevant evidence and articulated well-supported reasons for her assessment that Claimant could sit, stand, and walk within the confines of light level work; occasionally balance and crouch; and had no additional reaching or manipulative limitations. (Tr. at 18-22). Claimant does not identify any evidence that the ALJ overlooked in her assessment, or which substantiated greater physical functional limitations. Regarding Claimant's ability to sit, stand, walk, crouch, and balance, the ALJ referenced Claimant's normal gait, strength, reflexes, sensation; daily activities; and the prior administrative findings. Contrary to Claimant's assertion, Dr. Nutter did not assess that she could not sit for more than 30 minutes. (Tr. at 326-30). He did not render any opinion regarding the length of time that Claimant could sit, and he documented that Claimant appeared comfortable in the seated position. (Tr. at 327). Although Dr. Nutter recorded that

Claimant could not squat during her consultative examination, he did not opine that Claimant could never crouch, and the ALJ explained her reasons for finding that Claimant could occasionally crouch, including the physical findings during Claimant's numerous other examinations and the prior administrative conclusions that she could occasionally crouch. Furthermore, regarding Claimant's ability to reach, handle, finger and feel, the ALJ discussed that x-rays of Claimant's hands and EMG indicated mild abnormalities; her right shoulder x-ray was normal; she had 5/5 upper extremity and grip strength; and she could write, pick up coins, perform personal care, load the dishwasher, and make coffee. (Tr. at 20-21). Based on the above, the undersigned **FINDS** that the ALJ properly evaluated Claimant's physical functions in the RFC analysis.

### 2. Vision

Claimant further asserts that the ALJ did not consider her bilateral vision of 20/100. (ECF No. 13 at 4). However, she does not identify evidence that the ALJ overlooked or errors in the decision regarding her visual ability. The ALJ discussed that Claimant was able to drive, watch television, perform personal hygiene, care for pets, load the dishwasher, read, make coffee, and engage in other activities. (Tr. at 21). In addition, the ALJ found persuasive the prior administrative findings that Claimant did not have any visual limitations. (Tr. at 21-22, 87, 100). Claimant does not offer argument or evidence to undermine the ALJ's well-reasoned analysis. Although Claimant's uncorrected vision was 20/100, she testified that her vision was 20/40 with her glasses. (Tr. at 43, 327). There is more than a scintilla of evidence to support the ALJ's conclusion that Claimant did not have any visual limitations. For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis regarding Claimant's vision is

supported by substantial evidence.

### 3. Mental Impairments

Claimant contends that "the ALJ did not employ the proper procedure required by the provisions of 20 C.F.R. § 416.920a to classify, rate, and evaluate" her mental limitations. (ECF No. 13 at 5). She also indicates that the ALJ did not consider her "psychiatric limitations as indicated by the objective findings from the testing performed by the government's evaluating psychologist." (ECF No. 13 at 7).

However, the ALJ did not apply 20 C.F.R. § 416.920a because Claimant filed a DIB application, and the cited provision relates to SSI. To the extent that Claimant intended to reference 20 C.F.R. § 404.1520a, the ALJ clearly applied the special technique to evaluate Claimant's mental impairments. (Tr. at 14-16). Claimant does not develop her challenge that the ALJ failed to properly "classify, rate, and evaluate" her mental limitations. Therefore, it is unclear on what basis Claimant argues that the ALJ misapplied the applicable law.

The ALJ discussed Claimant's consultative examination at length and considered that, although Claimant was prescribed Effexor by her primary care provider, she never received specialized mental health treatment, went to the emergency room for mental health issues, or was hospitalized for psychiatric reasons. Furthermore, she maintained a variety of daily activities. (Tr. at 14-16). The ALJ found persuasive the state agency psychologists' assessments that Claimant did not have any severe mental impairments. (Tr. at 16). Claimant does not cite evidence or offer argument to dispute the ALJ's findings. For those reasons, the undersigned **FINDS** that the ALJ's analysis of Claimant's mental impairments is supported by substantial evidence.

### 4. Pain

Claimant states that the ALJ did not properly consider her pain. (ECF No. 13 at 6-7). An ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. § 404.1529 (effective March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id*. § 404.1529(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id*. § 404.1529(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a

18

claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

In *Hines v. Barnhart*, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for those of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach

independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ performed the two-step process. She discussed Claimant's allegations, including her diagnoses of lumbar fracture and arthritis and the fact that she took hydrocodone and Tramadol for joint pain. (Tr. at 18). After considering the evidence, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id*.). However, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record" for several reasons. The ALJ noted the medical evidence, including Claimant's x-rays and other tests; normal gait, strength, reflexes, and sensation; daily activities; and the opinion evidence. (Tr. at 19-22). Claimant again offers nothing to rebut the ALJ's well-reasoned conclusions and specific citations to the record. She does not identify any critical evidence, which the ALJ neglected to consider that had any conceivable impact on the ALJ's decision. Therefore, the undersigned **FINDS** that substantial evidence supports the ALJ's subjective symptom analysis.

### B. VE Hypothetical

Claimant argues that the ALJ did not include all of her impairments in the hypothetical posed to the VE. (ECF No. 13 at 4-8). In order for a VE's opinion to be

relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). To frame a proper hypothetical question, the ALJ must first translate the claimant's physical and mental impairments into an RFC that is supported by the evidence; one which adequately reflects the limitations imposed by the claimant's impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006). A hypothetical question will be "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Id.* (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (noting that hypothetical question "need only reflect those impairments supported by the record"). However, "[t]he Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005).

In this matter, the ALJ asked the VE if someone with Claimant's characteristics and RFC could perform Claimant's past relevant work as a bank teller or data entry clerk, and the VE responded that the person could perform both jobs as they are generally performed. (Tr. at 49-51). The ALJ presented a second hypothetical that was restricted to occasional fingering, handling, feeling, pushing and pulling with the bilateral upper extremities. (Tr. at 51-52). The VE responded that such limitations would eliminate Claimant's past work and any other jobs. (Tr. at 52). Finally, the ALJ

questioned if there were any jobs that could be performed by a person who was off task for 15 percent or more of the workday, and the VE responded that it would preclude employment. (*Id.*).

For the reasons discussed, Claimant does not assert any viable arguments that the RFC finding was unsupported by substantial evidence. She does not offer evidence that she had greater limitations than the ALJ included in the first hypothetical to the VE. Therefore, there was no justification for the ALJ to include any additional limitations in her hypothetical scenarios or rely on the VE's response to the hypothetical questions concerning an individual who was limited to occasional reaching and manipulative functions or was off-task for 15 percent or more of the workday. Accordingly, the undersigned **FINDS** that the ALJ properly relied on the VE's testimony at step four of the sequential evaluation.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 13); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by

23

mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** November 30, 2021

Cheryl A. Eifert
United States Magistrate Judge

24